IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

**FILED**
August 02, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: __Greg Duenas__
DEPUTY

| | | |
|---|---|---|
| **NELSON ARAGONES,**<br>Reg. No. 28199-480,<br>Movant,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-22-CV-239-DCG**<br>**EP-18-CR-3544-DCG-1** |

## MEMORANDUM OPINION AND ORDER

Nelson Aragones moves to vacate, set aside, or correct his sentence through a *pro se* motion pursuant to 28 U.S.C. § 2255. Mot. to Vacate, ECF No. 91.[1] His motion is denied because it plainly appears from the motion and the record of prior proceedings that he is not entitled to relief.

### BACKGROUND

Aragones is a 46-year-old federal prisoner serving a 120-month sentence for drug trafficking. J. Crim. Case 1, 2, ECF No. 81. He is currently incarcerated at the Federal Correctional Institution Coleman Medium in Sumterville, Florida. *See* Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 28199-480) (last visited July 20, 2022). His anticipated release date is March 27, 2030. *Id.*

Aragones shipped controlled substances through the mail. After postal inspectors caught him, he was indicted for possessing with intent to distribute more than 500 grams of

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-18-CR-3544-DCG-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

methamphetamine (count one) and using the mail to facilitate the commission of a felony (count two). Indictment, ECF No. 3. He had a long record of criminal convictions. PSR, ECF No. 69 at ¶¶ 31–50. So he also received notice the Government would seek an enhanced punishment based on two of them: possession of a controlled substance in cause number 20140D04066 in the 34th District Court of El Paso County, Texas, and possession of a controlled substance in cause number 20080D000573 in the 168th District Court of El Paso County, Texas. Information, ECF No. 5.

Aragones was incarcerated with the Texas Department of Criminal Justice at the time he was indicted. Presentence Investigation, ECF No. 69 at ¶ 11. He was serving a six-year state-imposed sentence for possession of more than 50 pounds of marijuana under cause number 20160D01098 in the 120th District Court in El Paso County, Texas. *Id.* at ¶¶ 11, 49. He was taken into federal custody on a writ of habeas corpus *ad prosequendum*—a writ issued to remove him from state custody for prosecution in this case—on March 25, 2019. Application, ECF No. 16.

Aragones elected to plead guilty to count one. Plea Agreement, ECF No. 62 at 1. Under the terms of a plea agreement, he waived his right to present evidence and witnesses on his own behalf. *Id.* at 3. He also waived his right to additional discovery and to collaterally attack his sentence unless he believed his counsel had provided ineffective assistance or the prosecutor had engaged in misconduct. *Id.* at 4–5. He admitted that the following facts were "true and correct":

> On or about February 24, 2018, a United States Postal Inspector (USPI) received a tip from an El Paso Police Department (EPPD) officer about a possible shipment in the mail containing a controlled substance. According to the EPPD officer, the return street address on the package was Sumatra St. in El Paso, Texas.

2

> The USPI visited the post office closest to that address. ... The USPI identified a package that was refused by the current resident(s) on Sumatra St. ... The package had similar characteristics with previously seized packages, such as heavy-taped seams and a misspelling of the street address. ...
>
> [The] USPI obtained a search warrant for the package. ... [T]he USPI found a bundle consisting of a substance that field-tested positive for the properties of methamphetamine.
>
> [The] USPI reviewed surveillance video and found that on or about February 17, 2017, the Defendant wrote the addresses on the label and mailed the package. ...
>
> On or about June 20, 2017, the substance was lab tested positive for the properties of Methamphetamines and weighed 997.8 grams (.998 kilograms) and was 98% pure. ...
>
> On or about October 6, 2018, a lab report was returned concerning the Defendant's fingerprints. That report indicated that six prints on the packaging material were identified as being associated to the Defendant. ...
>
> Defendant now admits and affirms that on or about February 17, 2017, ... he knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance.

Plea Agreement, ECF No. 62 at 6, 9.

In exchange for Aragones' guilty plea, the Government agreed to dismiss the remaining count and not to oppose downward adjustments to his sentence for his acceptance of responsibility. *Id.* at 1–3. In an addendum, the Government also agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), "to recommend that a sentence of one-hundred and twenty (120) months of imprisonment [was] appropriate and reasonable under the circumstances of this case." Addendum, ECF No. 63 at 1. The Government then said it would defer "to the Court on whether the sentence imposed . . .

3

should run concurrently, partially concurrently, or consecutively to any time that the Defendant serve[ed] on the undischarged state terms of imprisonment." *Id.* at 2.

The probation officer who prepared Aragones' presentence investigation report (PSR) held him "accountable for 997.8 grams of methamphetamine" discovered in the package by the postal inspector. PSR, ECF No. 69 at ¶ 13. He concluded Aragones was a "career offender" based on two prior robbery convictions. *Id.* at ¶ 25. He awarded 24 criminal history points for multiple prior convictions—including one point for a conviction in the Lowell City Court of Batesville, Arkansas, in cause number DWI-2004-64 for driving while intoxicated. *Id.* at ¶¶ 33, 52. He concluded, "[b]ased upon a total offense level of 34 and a criminal history category of VI, [Aragones'] guideline imprisonment range [was] 262 months to 327 months. *Id.* at ¶ 79.

Aragones did not file written objections to the presentence investigation. Obj., ECF No. 69-2.

The Court followed the terms of the addendum to the plea agreement and sentenced Aragones to 120 months' confinement followed by five years' supervised release. Sentencing Tr., ECF No. 87 at 7:3–7:9. The Court clearly stated in the judgment that Aragones should receive "credit for time served while in custody for this federal offense." J. Crim. Case, ECF No. 81 at 2.

The Fifth Circuit Court of appeals dismissed Aragones' direct appeal as frivolous. J., ECF No. 89 at 2.

Mindful of Aragones' *pro se* status, the Court understands him to now assert three claims. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* pleadings to less

4

stringent standards than formal pleadings drafted by lawyers). First, he contends his counsel provided ineffective assistance when he failed to (1) litigate the credit toward his sentence that he would receive for his pretrial detention; (2) enforce the Government's recommendation that he receive credit for his pretrial detention; (3) inform the Court that the Bureau of Prisons (BOP) would not grant Aragones credit for his pretrial detention unless directed to do so by the Court in the judgment; (4) file a written objection to his erroneous criminal history score which included an offense in paragraph 33 which he did not commit; and (5) challenge the forensic analysis of the fingerprints on the package. Br. in Supp., ECF No. 91-1 at 3. Second, Aragones asks the Court to intervene in his behalf and order the BOP to grant him 30 months' credit for time spent in pretrial federal custody for this offense. *Id.* at 3; Mot. to Vacate, ECF No. 91 at 13. Finally, Aragones asks the Court to delete paragraph 33 from his PSR because he claims he did not commit the offense. Br. in Supp., ECF No. 91-1 at 5; Mot. to Vacate, ECF No. 91 at 13.

## APPLICABLE LAW

### A. Motion to Vacate, Set Aside or Correct Sentence

Title 28 U.S.C. § 2255 " 'provides the primary means of collateral attack on a federal sentence.' " *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *Reed v. Farley*, 512

5

U.S. 339, 354 (1994) (stating "[w]here the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.' "). And it identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion . . . and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

### B. Ineffective Assistance of Counsel

A movant may bring "an ineffective-assistance-of-counsel claim . . . in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A movant's claim is analyzed under the two-pronged test identified in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a movant must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, a movant must show that his counsel's assistance fell " 'below an objective standard of reasonableness.' " *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). "In the context of sentencing, prejudice means that but for his counsel's error, his sentence would have been significantly less harsh." *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). If a movant fails to prove one prong, the reviewing court need not analyze the other. *See Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## ANALYSIS

### A. Pretrial Credit

Aragones asserts in several of his claims that his counsel and the Court erred by failing to intervene in his behalf to ensure that he received credit for the time spent under Marshals Service supervision while awaiting his federal trial. He maintains he should receive credit for the time between March 25, 2019, the day he was taken into federal custody on the writ of habeas corpus

7

*ad prosequendum*, and November 16, 2020, the day of his sentencing. He apparently does not understand how federal sentences are calculated.

"There is no statutory authority for a district court to award credit against federal sentence for time spent in state custody." *United States v. Barrera-Saucedo*, 385 F.3d 533, 536 (5th Cir. 2004). "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *See United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed")); *see also* 28 C.F.R. § 0.96 ("The Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons (including insane prisoners and juvenile delinquents) charged with or convicted of offenses against the United States."). As a result, the BOP—not defense counsel or the Court—is responsible for implementing the statutes concerning the computation of a federal sentence. And the BOP's "computation of the credit must occur after the defendant begins his [federal] sentence." *Wilson*, 503 U.S. at 333.

A federal sentence commences when the BOP receives a defendant into its custody *after sentencing*:

> **(a) Commencement of sentence.** -- A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a). But the BOP must grant credit against a federal sentence for time spent in pretrial custody—*if the time is not credited against another sentence*:

8

> **(b) Credit for prior custody.** -- A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Id. § 3585(b) (emphasis added). Even "short intervals while 'on loan' to federal authorities pursuant to writs of habeas corpus *ad prosequendum*" are not credited towards subsequent federal sentences. *United States v. Brown*, 753 F.2d 455, 456 (5th Cir. 1985).

Aragones was picked up by the Marshals Service on a federal writ of habeas corpus *ad prosequendum* on March 25, 2019. Resp. to Inmate Request, ECF No. 91-2 at 7. He was sentenced by the Court "to be imprisoned for a term of one hundred twenty (120) months with credit for time served while in custody for this federal offense" on November 16, 2020. J. Crim. Case, ECF No. 81 at 1, 2. But he could not receive jail credit for time awarded to another sentence. *Id*. And he was not paroled from his state sentence until September 19, 2021. *Id*. Consequently, His federal sentence began on September 19, 2021. *See* Current Computation, ECF No. 91-2 at 9–10.

The Court must defer to the BOP to make the appropriate sentencing calculation since (1) it did not know whether Aragones was receiving credit against his state sentence for the time under Marshals Service supervision at the time of his sentencing, and (2) the BOP had the statutory authority to calculate credit for prior custody.

After reviewing the motion and the record of prior proceedings, the Court finds Aragones has not shown that the BOP improperly calculated the credit for the time he spent under

Marshals Service supervision after March 25, 2019. Consequently, the Court also finds Aragones has not shown that the Court committed any error that could be redressed in a § 2255 motion in sentencing him.

Additionally, the Court finds there is no evidence that Aragones' counsel promised him that the BOP would calculate his credit in a particular manner. Moreover, the Court finds that since Aragones received credit for time he spent in federal custody after he was paroled from his state sentence and before he was sentenced by the Court, he cannot show that his counsel's performance was either deficient or prejudiced his cause.

### B. Erroneous Criminal History Score

Aragones was awarded one criminal history point in paragraph 33 of his PSR for a conviction in the Lowell City Court of Batesville, Arkansas, in cause number DWI-2004-64 for driving while intoxicated. PSR, ECF No. 69 at ¶ 33. He did not file written objections to the PSR. Obj., ECF No. 69-2. He did, however, claim he reviewed and discussed the PSR with his counsel before his sentencing. Sentencing Tr., ECF No. 87 at 5:4–5:8. Still, he did not make oral objections to the PSR at his sentencing hearing. And he did not make objections to his criminal history in his direct appeal.

Aragones now claims the entry in paragraph 33 of the PSR is erroneous. Br. in Supp., Doc 91-1 at 5. But he provides letters from Fayetteville, Arkansas, to support his contention that he was not prosecuted under cause number 72CR-08-1528. Exhibits A & B, ECF No. 91-2 at 3, 4. Paragraph 42 in the PSR awards Aragones one criminal history point for a forgery conviction in Fayetteville. PSR, ECF No. 69 at ¶ 42.

The Court notes that even if the driving while intoxicated offense in Batesville and the forgery offense in Fayetteville were improperly counted, Aragones would still be in the same criminal history category of VI.

The Court further notes Aragones' plea agreement waives his right to collaterally attack his sentence. Plea Agreement, ECF No. 62 at 4–5. His waiver is enforceable if it is both knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). He does not now suggest that he did not knowingly or voluntarily accept the terms of the plea agreement—including the waiver. And he received a substantial benefit from the plea agreement—a binding agreement under Federal Rule of Criminal Procedure 11(c)(1)(B) for the Government "to recommend that a sentence of one-hundred and twenty (120) months of imprisonment" when his sentencing guideline range was 262 to 327 months' imprisonment. Addendum, ECF No. 63 at 1; PSI, ECF No. 69 at ¶ 79.

Furthermore, Aragones' challenge to the calculation of his criminal history category does not state a cognizable claim under § 2255. *See United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994) ("[A]n attack on the district court's upward departure is not cognizable in a § 2255 action. [The] claim poses no constitutional, statutory, or jurisdictional claim."); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255.").

### C. Challenge the Forensic Analysis of the Fingerprints

Aragones contends his counsel provided ineffective assistance when he "failed to challenge the fingerprint forensic analysis on the mail package." Br. in Supp., ECF No. 91-1 at 3.

11

Notably, Aragones does not suggest a basis for challenging the fingerprint analysis. His unsupported "bald assertion[ ]" does not raise a constitutional issue. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). And, under the terms of his plea agreement, he not only waived his right to present evidence and witnesses on his own behalf, but also his right to additional discovery. Plea Agreement, ECF No. 62 at 3, 4. He does not now challenge the validity of the plea agreement. Simply stated, Aragones cannot now claim that his counsel's performance was deficient for failing to pursue additional discovery concerning the fingerprints—when Movant knowingly and voluntarily waived further discovery.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case is adequate to dispose fully and fairly of Aragones' claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir.

12

2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Aragones' claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court will not issue a certificate of appealability.

## CONCLUSION AND ORDER

The Court concludes that it plainly appears from Aragones' motion and the record of prior proceedings that he is not entitled to § 2255 relief. Indeed, Aragones has clearly failed to assert claims establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Aragones is not entitled to a certificate of appealability.

Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Aragones' *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 91) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that Aragones is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

IT IS FURTHER ORDERED that all pending motions are **DENIED AS MOOT**.

IT IS FINALLY ORDERED that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** this ___2nd___ day of July 2022.

**DAVID GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**